**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **CLEVELAND FREIGHTLINER, INC.,** | ) | **CASE NO.1:09CV1108** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **FEDERATED SERVICE INSURANCE** | ) | **OPINION AND ORDER** |
| **CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Federated Service Insurance Co.,'s

("Federated") Motion to Dismiss (ECF # 9).  For the following reasons, the Court grants

Defendant's Motion.

**I. FACTUAL BACKGROUND**

Plaintiff Cleveland Freightliner, Inc.'s (dba Valley Freightliner, Sterling and Western

Star Trucks of Cleveland),("CFI") Complaint alleges that at all relevant times CFI maintained an

1

insurance policy with Federated.[1]  (ECF #1, Ex 1, 2, 3 to Plaintiff's Complaint). The policy

provides CFI and/or its employees defense and indemnification against suits within the policy's

ambit.  In 2008 and 2009 CFI was sued in three separate cases arising from the financing of

Terex articulated dump trucks. The plaintiffs in the three underlying suits are financing

companies who loaned  funds for the purchase of the dump trucks. The underlying complaints

allege the financing companies relied on representations made by CFI and/or its employees in

order to finance the purchase of the dump trucks by Kaz Paving, Inc ("Kaz") All three suits

allege that CFI never owned the dump trucks despite CFI's representations to the contrary.  The

three underlying suits pending against CFI allege claims for consumer fraud, constructive fraud,

misrepresentation, breach of contract and warranty, civil conspiracy and RICO violations. CFI

notified its insurer, Federated, of the suits and made demand for defense and indemnification

under its insurance policy.  Federated refused to provide a defense and refused to indemnify CFI,

contending that the claims in the underlying suits were not covered under the policy.  After

Federated denied coverage to CFI on the claims, two of the underlying three suits added

negligence claims in amended complaints.  CFI tendered the new complaints to Federated, who

subsequently denied coverage. CFI now sues for a declaratory judgment asking the Court to find

Federated is obligated to defend and indemnify CFI under the policy.  It further claims breach of

contract and bad faith for Federated's failure to defend and indemnify.

## II. <u>STANDARD OF REVIEW</u>

The Defendant's Motion to Dismiss was brought under Federal Rule of Civil Procedure

---

[1]     Though two of the underlying Complaints name Valley Freightliner as Defendant, for purposes of
this Opinion the Court will use "CFI" when discussing the CFI entities sued in the underlying
suits.

12(b)(6), which states:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a
> claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the
> responsive pleading thereto if one is required, except that the following defenses
> may at the option of the pleader be made by motion: (6) failure to state a claim
> upon which relief can be granted;

" The Supreme Court has recently clarified the pleading standard necessary to survive a

Rule 12(b)(6) motion." *CGH Transport Inc. v. Quebecor, World, Inc.,* 261 Fed. App'x. 817, 819,

(6th Cir. 2008) citing *Bell Atl. Corp. v. Twombly ,* 550 U.S. 544 (2007). Factual allegations

contained in a complaint must 'raise a right to relief above the speculative level.' *Id.* at 1965.

*Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a

claim to relief that is plausible on its face." *Id.* at 1974. "In reviewing a motion to dismiss, we

construe the complaint in the light most favorable to the plaintiff, accept its allegations as true,

and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d

471, 476 (6th Cir.2007).  Recently, the United States Supreme Court rendered its decision in

*Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937 (2009).  The Court discussed *Twombly* and

provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can
> choose to begin by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.  While legal conclusions
> can provide the framework of a complaint, they must be supported by factual
> allegations.  When there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly give rise to an
> entitlement to relief.

*Id.* at 1950.

The Supreme Court in *Iqbal* further held, " a pleading that offers 'labels and conclusions'

or 'a formulaic recitation of the elements of a cause of action will not do.'" quoting *Twombley* at

555. The Supreme Court in *Iqbal* went on to say, " [n]or does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal* at 1949, quoting *Twombley* at 557. When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001).

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Nevertheless, the Supreme Court has reiterated the discretionary nature of the Act. In *Public Affairs Press v. Rickover*, 369 U.S. 111(1962), the highest court opined: "'The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.' *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)." The Supreme Court has also stated that the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64, 72 (1985).

Finally, the issues before the Court involve the interpretation of an insurance contract. In Ohio, "construction of a contract is a question of law." *Ferro Corp. v. Cookson Group, PLC, et al.,* 585 F.3d 946, 950 (6th Cir 2009)citing *In re All Kelley & Ferraro Asbestos Cases,* 104 Ohio St.3d 605 (2004). Therefore, a Motion to Dismiss is an appropriate vehicle for resolving the disputes. The parties do not dispute that Ohio law governs the Court's interpretation of the relevant insurance policy provisions.

4

### III. ANALYSIS

Federated's central argument is that the allegations in the underlying complaints are not covered under the policy because the insured procured financing for the sale of dump trucks based on its representation that it owned and possessed the trucks when it did not.  Such conduct is not, according to Defendant, covered under its policy.

### A.      The Insurance Policy

Federated's Commercial General Liability Policy with Plaintiff, Policy No. 9929611, states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The policy then states:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)      the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";...

CFI's policy with Federated includes a Garage Coverage Form, a Commercial General Liability Coverage Part ("CGL") and several endorsements, including a Title Errors and Omissions Endorsement, False Pretense and Government Confiscation Endorsement, Truth In Lending and Leasing Liability Endorsement and Extended Defense Protection Endorsement. Defendant does not dispute the policy was in effect at the time of the alleged incidents that form the basis of the underlying suits.

5

In order for the Garage Operations Form or CGL Coverage to apply, Defendant contends there must  be "property damage" due to an "accident" or "occurrence".  The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (CGL Policy Sec. V, pg. 14).  "Property damage" under the CGL is defined as " (a) physical injury to tangible property, including all resulting loss of use of that property... (b) loss of use of tangible property that is not physically injured.") (CGL Policy Sec. V. pg 15).

Both parties concede the term "accident" is not defined in the policy.   When a term in an insurance contract is not defined, Ohio law requires the court apply the term's ordinary meaning.  See *Owens-Illinois, Inc. v. Aetna Cas. and Sur. Co.,* 990 F.2d 865, 872 (6th Cir. 1993).

> " Under Ohio law, where, as in this case, a term in an insurance contract is not defined, it is to be given its ordinary meaning: "The law in this state is well-established with respect to the interpretation of insurance contracts. A court has an obligation to give plain language its ordinary meaning...."

quoting *Miller v. Marrocco,* 28 Ohio St.3d 438 (1986);

Under Ohio law, "accident" is defined as "unintended and unexpected happenings." *Owens-Illinois,* at 872 citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co.,* 64 Ohio St. 3d 657 (1992) ( "Ohio courts have consistently described the ordinary meaning of "accident" to refer to unintended and unexpected happenings.")

**B.**      **Arguments on Motion to Dismiss**

Defendant contends that none of the coverages contained in the policy or endorsements apply to the claims in the underlying Complaints.  Furthermore, Defendant contends that the negligence claims, added through amendments when Defendant denied defense and indemnification of the original complaints, does not alter the nature of the conduct as stated in

6

the facts of the Amended Complaints.

Defendant contends the underlying suits allege deceitful and fraudulent conduct and the facts underlying the negligence claims, according to Defendant, are the same facts stated in support of the fraud, breach of contract and breach of warranty claims. Defendant argues that under Ohio law the mere insinuation of negligence cannot convert intentional tort claims into negligence claims that may be covered by insurance. Furthermore, the underlying complaints do not allege that the trucks were damaged or that the lenders lost the use of the trucks.  Instead, according to Defendant, the lenders' complaints allege economic losses due to compromised security interests in the trucks, placing them outside the policy definition of tangible property.

Plaintiff argues the alleged negligence claims constitute an "occurrence" under the policy and therefore, trigger Defendant's duty to defend because negligent conduct is unexpected and unintended.  Furthermore, the loss of a security interest in the dump trucks would be considered property damage under the terms of the policy because the loss of a security interest is loss of a possessory interest in the dump trucks and therefore, would be loss of the use of the vehicle. Finally, there is no language in the policy excluding economic loss from the definition of "property damage".

Under Ohio law, it is the allegations as set forth in the complaint against the insured that determines the scope of the duty to defend.  *Ohio Gov't. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 246 (2007). "The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage. However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." *Id.*

7

### C. The Underlying Suits

#### 1)  *Mericap Credit Corp., v. Valley Freightliner*

In the *Mericap* suit, brought in Cook County Illinois Circuit Court, Mericap alleges on May 5, 2008, CFI submitted an application for financing with Mericap for a 2007 Terex commercial dump truck on behalf of its customer, Kaz.  Mericap alleges CFI represented to Mericap that the truck would be delivered to Kaz as part of the transaction.  Furthermore, the Complaint alleges CFI deceived Mericap into believing CFI had possession of the truck and had the ability to transfer the truck to Kaz upon receipt of the financing from Mericap.  In fact, according to the allegations in Mericap's Complaint, CFI never possessed the truck.  In reliance on the false representations by CFI, Mericap provided financing of the truck which was subsequently defaulted upon, causing damages to Mericap in the amount of $294,253.96. Also, Mericap alleges CFI falsely represented it made the truck and that Mericap had an opportunity to provide financing for it.  Mericap, in reliance on the false representations, provided financing of the truck to Mericap's detriment. The *Mericap* suit contains two claims for consumer fraud and deceptive practice act, and constructive fraud.

### Occurrence and Property Damage

In the *Mericap* suit, the Court finds Defendant owed no duty to defend CFI because the allegations in the *Mericap* Complaint do not allege facts supporting an "occurrence" under the policy.  Both claims allege fraudulent conduct, which does not meet the definition of "occurrence" which is, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Under Ohio law an accident is defined as "unintended and unexpected happenings."  Because the *Mericap* suit alleges intentional conduct on the part

8

of CFI and alleges only two fraud claims, the allegations in the *Mericap* Complaint do not meet the policy definition of an "occurrence" that resulted in property damage under the policy and Defendant has no duty to defend or indemnify.[2]  Although under Illinois law, constructive fraud does not require an intent to deceive, the facts underlying the *Mericap* suit expressly state CFI deceived Mericap with the intent that Mericap would rely on CFI's deceptions.  Therefore, the allegations allege acts that are not "occurrences" as defined under the policy.

Furthermore, the *Mericap* suit does not allege loss of the use of the dump truck, or loss of a security interest in the dump truck.   The *Mericap* Complaint alleges CFI never possessed or had the ability to transfer the dump truck to its customer Kaz. There is no allegation that Mericap had or expected to obtain a security interest in the dump truck when it provided financing for the vehicle.  Therefore, the Court holds there was no property damage under the policy definitions because Mericap's Complaint clearly alleges CFI never had the ability to transfer  the dump truck in question.  There is no allegation of damage to any tangible property nor is there an allegation that Mericap lost the use of tangible property- i.e. the dump truck.

**Contract Exclusions under the Policy**

Exclusion 14 and Exclusion 2 of the Garage Coverage Form and 2b of the CGL preclude coverage for liability arising out of damages assumed under contracts or for delay or failure to

---

[2]      For reasons unknown to this Court both Plaintiff and Defendant discuss and analyze in their motion briefs and opposition, the case entitled *Mericap Credit Corp v. Valley Frieghtliner, Sterling and Western Star Trucks of Cleveland*, Cuyahoga County Court of Common Pleas No. CV 09 699562.  The issues in that case are not before the Court as there is no claim in the Complaint regarding this case and Plaintiff has not alleged Defendant owes a duty to Plaintiff to defend or indemnify for the claims in that case.  Thus, there is no claim for negligent misrepresentation in the *Mericap* suit before this Court.  Rather, the negligent misrepresentation claim is made in the *Mericap* suit in Cuyahoga County.  Plaintiff does not mention that case in its Complaint but limits its claims to the *Mericap* suit in Illinois which it acknowledges has been dismissed for lack of personal jurisdiction.

perform a contract.  Because there is no alleged contractual relationship between CFI and Mericap or allegation of damage for breach of contract alleged in the *Mericap* Complaint, these exclusions do not apply.

**Title Errors and Omissions Coverage**

Defendant's Policy provides coverage for all sums resulting from an act, error or omission in title paper preparation. "Title Paper Preparation" is defined under the policy as, "the preparation of official title papers for registering an auto sold by you, including the designation of a lienholder who holds a financial interest in the auto." The Court holds there is no claim for damages arising from title paper preparation in the *Mericap* Complaint since the Complaint does not allege damages for registering an auto. Therefore, the Court finds this policy provision does not impose a duty to defend or indemnify CFI arising from the allegations in the *Mericap* suit.

**Truth in Lending Coverage**

Under the Truth In Lending and Leasing Liability Endorsement the policy provides coverage for damages CFI would be legally obligated to pay due to its errors or omissions by operation of the Title 1 of the Truth in Lending Act or any statute relating to truth in lending and leasing which applies to CFI's civil liability. The policy excludes such coverage if the error or omission is the result of a "dishonest, malicious, fraudulent, criminal or intentional act or omission."

CFI claims Count One of the *Mericap* Complaint alleges consumer fraud under Illinois statute.  According to CFI, the statute prohibits not only classic fraud but misrepresentations with lesser degrees of culpability including innocent or negligent misrepresentations.  Therefore, CFI argues, the policy exclusions for intentional conduct would not apply and Federated had a

10

duty to defend.

Again, the Court must note that Plaintiff is arguing a claim of negligent misrepresentation found in the *Mericap* suit in Cuyahoga County that is not a part of the suit before this Court. Because the allegations in the Illinois *Mericap* suit allege only  two counts of fraud premised on the allegation that CFI "intended for Mericap to rely on its representations which, in truth, were deceptions...", the Truth in Lending and Leasing Liability Endorsement Exclusions preclude coverage.

**False Pretense Coverage**

Under the False Pretense and Government Confiscation Coverage Endorsement, which modifies the Garage Coverage Form,  coverage is provided for loss of covered autos that results from CFI voluntarily parting with a covered auto due to a number of causes, including: "any other criminal scheme, criminal trick or criminal devise which induces you, at that time, to part with evidence of title to or possession of the covered auto."  The endorsement further states, "we will pay for loss to a covered auto under this coverage that results from you acquiring possession of an auto that is stolen or which has a forged, altered, or counterfeit title or invalid duplicate title."

Defendant contends, and this Court agrees that this endorsement provides only first person coverage -i.e.- coverage to CFI for losses it incurs under the policy.  It is not liability coverage for losses to third parties and does not impose a duty to defend.  This does not preclude CFI from filing a claim for its own losses, if any, under the policy but it does not impose a duty or obligation by Defendant to defend or indemnify CFI for claims by third parties.  Furthermore, the allegations in the *Mericap* Complaint allege that it was CFI who fraudulently induced

11

Mericap to finance the dump truck in question.  There is no allegation that CFI was tricked by someone else into parting with a covered auto.  Therefore, the coverage under the False Pretense policy does not impose a duty on Defendant to defend or indemnify Plaintiff.

**Extended Defense Protection Endorsement**

This endorsement provides liability and defense coverage for costs incurred to defend a suit filed against CFI, by or on behalf of a customer, arising out of the sale, service, lease, rental or repair of CFI's product.  The parties dispute whether Mericap is a customer of CFI.  There is no dispute that the policy does not define customer.  The *Mericap* Complaint alleges CFI is "a seller of commercial vehicles..."  The *Mericap* suit does not allege Mericap purchased a vehicle from CFI.  Defendant contends Mericap is not a customer of CFI and coverage does not apply.  CFI contends the policy does not define "customer", therefore, the Court should use the 6th Edition Black's Law Dictionary definition of "customer":

> One who regularly or repeatedly makes purchases of, or has business dealings with a tradesman or business.  Ordinarily, one who has repeated business dealings with another.  A buyer purchaser, consumer or patron.

CFI argues CFI and Mericap had business dealings, the term "customer" is ambiguous, the parties are of unequal bargaining power and the contract is standardized, therefore, the term should be construed against Defendant and in favor of CFI.  Lastly, CFI contends the policy only requires the suit be "on behalf of" a customer to trigger defense and indemnification.

Defendant argues that the lenders, including Mericap, are not customers, therefore, the policy does not apply to suits by lenders against CFI.  Defendant further contends an Ohio court has already determined that in an automobile dealer's policy, the term "customer" was not ambiguous even when the policy does not define it.  In *Wojnarowsky v. Shelby Insurance Co.,*

12

No. 2003-L-164, 2005 WL 694415 (Ohio Ct. App. Mar. 25, 2005) the Ohio Appellate Court of the Eleventh District upheld the trial court's grant of summary judgment in favor of the insurer, agreeing with the trial court that the term "customer" in the policy was not ambiguous.  The court considered the same 6th Edition of Black's Law Dictionary definition of customer, though it limited the definition to "a buyer, purchaser, consumer or patron."[3]

The lenders not only are not customers according to Defendant but under the facts alleged in the underlying complaints are not bringing suit on behalf of Kaz, the customer, either. The *Mericap* Complaint alleges that CFI submitted a financing application to Mericap on behalf of CFI's customer Kaz.  Under the definition used by the Ohio Appellate Court in *Wojnarowsky,* the facts, as alleged in the *Mericap* suit, do not arguably support CFI's contention that Mericap was a customer or that its suit is on behalf of a customer.  The facts in the *Mericap* suit support a holding that CFI was Mericap's customer and not vice versa.

Even if the Court were to apply the full Black's definition, there is no allegation that Mericap and CFI had repeated dealings.  The Court holds the lenders were not customers of CFI, rather, they provided financing for CFI's customer Kaz. Therefore, there is no duty to defend or indemnify under the Extended Defense Endorsement.

The Court grants Defendant's Motion to Dismiss, holding Defendant had no duty to defend or indemnify CFI for the claims in the *Mericap* Complaint.


 **2) General Electric Capital Corp., v. Cleveland Freightliner, Inc.**

In the *GECC* suit, originally filed on February 10, 2009, in Cuyahoga County Court of

---

[3]        For reasons unknown, later editions of Black's Law Dictionary do not define "customer".

13

Common Pleas, GECC alleges CFI entered into Security Agreements with Kaz in March and April of 2008, wherein Kaz agreed to buy and CFI agreed to finance six 2007 Terex dump trucks.  CFI assigned the agreements to GECC by means of three separate Seller's Agreements which contained several warranties by CFI to GECC including:

  a)     CFI owned the collateral (the dump trucks);

  b)     the collateral was sold to Buyer in a bona fide sales transaction;

  c)     the collateral was delivered in satisfactory condition to Buyer and was accepted by Buyer; and

  d)     CFI would perfect GECC's security interest in the collateral.

According to the GECC Complaint, CFI breached these warranties because it never owned, sold or delivered the collateral and never perfected GECC's security interest in the collateral.  Due to the breach, GECC suffered losses in excess of $1.3 million dollars. GECC's Complaint alleged three counts of breach of warranties.

On April 17, 2009, GECC filed an Amended Complaint adding a negligence claim against CFI.  The claim contends CFI undertook a duty to perform acts pursuant to the Sellers Agreements, including warranting to GECC that CFI owned the trucks, that CFI would sell the trucks to Kaz and that CFI would deliver the trucks to Kaz.  GECC asserts it relied on those undertakings and CFI owed GECC a duty to perform its obligations under the Sellers Agreements which CFI breached, constituting negligence.


**Occurrence and Property Damage**

Unlike the *Mericap* Complaint, the *GECC* Complaints involve breach of contract

14

warranties made in assigned Seller's Agreements. These warranties do not fall under the definition of "occurrence" under the policy.  Although the parties have not pointed to, and the Court has not found, an Ohio case involving the same facts, Ohio courts have routinely held that breach of contract claims are not occurrences in policies using the same definition of "occurrence" as is contained in the Federated Policy.  See  *Auto Owners Mut. Ins. Co. v. Kendrick,* No 08-COA-028, 2009 WL 1263967 (Ohio Ct. of App. May 4, 2009).  *Monarch Const. Co. v. Great Am. Ins. Co.* No. C-960645, 1997 WL 346097 at *3, (Ohio Ct. of App. June 25, 1997); ("Breach-of-contract actions ordinarily do not involve "occurrences" as specified in commercial general liability policies.")

Here, the representations made by CFI in the Seller's Agreements that it owned, sold and delivered the vehicles in question were allegedly breached because CFI did not own, sell or deliver the vehicles in question.  Because these breaches of warranty arise out of the contracts, they are not "occurrences" under the policy.

The negligence claim, as alleged in the Amended Complaint states, "Defendant undertook a duty to perform certain acts under each of the above-referenced Seller's Agreements... Defendant breached its duty to perform its obligations under the aforementioned Seller's agreements with the care, skill, reasonable expedience, and faithfulness which are incidental to every contract, and the breach of such duties constitutes negligence."  Although captioned "negligence," the Court, in applying Ohio law, must consider the factual allegations in the Complaint to determine the claims and not consider how the complainant categorizes those claims.  See *Bosak v.H & R Mason Contr., Inc.,* Cuyahoga Cty. No. 86237, 2005 WL 3475817, *3 (Ohio Ct. of App. December 20, 2005). ("The actual substance of the complaint, not how it is

categorized, determines the nature of the claims.") citing *Ippolito v. First Energy Corp.,* Cuyahoga App. No. 84267, 2004 WL 2495665, (Ohio Ct. of App. November 4, 2004).  Since the negligence claim is merely a reiteration of the breach of warranties contained in the Seller's Agreements and since the duties allegedly breached were all imposed by the written Seller's Agreements, the Court finds that the negligence claim is not an "occurrence" under the policy for the same reasons that the breach of warranties are not "occurrences."

Nor does the *GECC* suit seek return of the collateral or loss of use damages in its Complaints.  Rather, GECC seeks to have CFI repurchase the Agreements for the net unpaid balances as agreed to by the parties to the Seller's Agreements, i.e., the amounts due and owing under the Agreements.  Nowhere does GECC allege the collateral was damaged, and nowhere in the Complaints does GECC seek damages for the loss of the use of the collateral.  Therefore, the GECC Complaints do not allege damage to tangible property as defined by the policy and there is no subsequent duty to defend or indemnify.

Furthermore, the relevant policy contains an exclusion under Exclusion 14 of the Garage Coverage Form for "loss of use of other property not physically damaged if caused by a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."  Exclusion 2 of the Garage Coverage Form and Exclusion 2b of the CGL Form also preclude coverage for damages assumed under any contract or agreement. CFI appears to concede that coverage in the GECC claims arising from the agreements would be precluded under these exclusions.  However, CFI contends the negligence claim would not be precluded because it is, "not dependent upon the existence of a contractual relationship." (CFI Opp. Pg. 14).  However, since the GECC Amended Complaint expressly states CFI's negligence arose

16

from its breach of its obligations under the Seller's Agreements, the negligence claim would also be excluded under the contract exclusion provisions.

**Title Errors and Omissions**

Defendant's Policy provides coverage for all sums resulting from an act, error or omission in title paper preparation.... This endorsement does not apply unless the purchaser sells or transfers title of the auto."  "Title Paper Preparation" is defined under the policy as, "the preparation of official title papers for registering an auto sold by you, including the designation of a lien holder who holds a financial interest in the auto."

The GECC Amended Complaint alleges that:

> Under the terms of the Seller's Agreement, Defendant made several warranties to Plaintiff including to wit:

> "Dealer further warrants as to all Documents that...the Collateral was delivered in satisfactory condition to the Buyer on the date set forth above and was accepted by Buyer..."

> "Dealer has caused or will promptly cause such actions or procedures to be taken as are required or permitted by statute or regulation to perfect such security interest and reservation of title in GE Capital's favor, including, without limitation, filing financing statements, recording documents and obtaining Certificates of Title disclosing GE Capital's interest..."

In its Original Complaint, GECC alleged a breach of the following warranty found in the Seller's Agreement:

> "The security interests and reservation of title evidenced by the Security Agreement are valid, first, prior to all others and effective against all persons;"

> ...Upon information and belief in each of the transactions described herein, the Defendants breached the warranties in that GE Capital does not have a perfected security interest in the collateral described in the documents.

> The security interest warranty and subsequent allegation of its breach were removed from

the Amended Complaint.

The Court finds there is no coverage under the Title Paper Preparation Endorsement for the claims alleged in the GECC Complaint and/or Amended Complaint for several reasons. First, the definition of Title Paper Preparation under the policy means, " the preparation of official title papers for registering an auto sold by you..." The Complaint and Amended Complaint allege CFI never sold the dump trucks.  Therefore, the claims do not implicate coverage.  Second, the endorsement expressly states that it "does not apply unless the purchaser, (in this instance Kaz), sells or transfers title of the auto." There is no allegation that Kaz sold or transferred title of the auto.  In fact, under the allegations in the Complaint and Amended Complaint Kaz could not have sold or transferred title of the auto because CFI never owned, sold, or delivered the vehicle to Kaz.  Therefore, there is no duty to defend or indemnify under this endorsement.

**Truth in Lending Coverage**

Under the Truth In Lending and Leasing Liability Endorsement the policy provides coverage for damages CFI would be legally obligated to pay due to its errors or omissions by operation of Title 1 of the Truth in Lending Act or any statute relating to truth in lending and leasing which applies to your civil liability.  There are no statutory claims in the GECC Complaint or Amended Complaint, therefore, no duty to defend or indemnify is implicated.

**False Pretense Coverage**

The False Pretense and Government Confiscation Coverage Endorsement, modifying the Garage Coverage Form, provides coverage for loss of covered autos that results from CFI

18

voluntarily parting with a covered auto due to a number of causes, including "any other criminal scheme, criminal trick or criminal devise which induces you, at that time, to part with evidence of title to or possession of the covered auto."  The endorsement further states, "we will pay for loss to a covered auto under this coverage that results from you acquiring possession of an auto that is stolen or which has a forged, altered, or counterfeit title or invalid duplicate title." As discussed in the Mericap portion of this Opinion, the False Pretense coverage is first-party coverage that does not impose a duty to defend or indemnify. Furthermore, the allegations in the GECC Complaint and Amended Complaint allege CFI never owned, delivered or sold the vehicle in question.  In short, the GECC Complaints allege CFI never parted with evidence of title to or possession of a covered vehicle.  Therefore, there is no duty to defend or indemnify under the False Pretense Coverage.

**Extended Defense Protection Endorsement**

This endorsement provides liability and defense coverage for costs incurred to defend a suit filed against CFI by or on behalf of a customer arising out of the sale, service, lease, rental or repair of its product. As the Court discussed in the *Mericap* portion of this opinion the term "customer" is not defined in the policy.  Referring to the definition described previously, the GECC Complaint and Amended Complaint do not contain any allegation of repeated business dealings between GECC and CFI.  Nor do the Complaint and Amended Complaint allege that GECC was damaged from the sale, service, lease, rental or repair of CFI's product.  The GECC Complaints allege CFI is in the business of commercial transport and trucking.   GECC seeks damages for breach of warranties that CFI owned, sold, delivered the dump trucks and perfected security interests.  In fact, the GECC Complaints expressly allege CFI never sold the dump

19

trucks in question. Therefore, because GECC is not a customer of CFI and the damages do not arise from a sale, service, lease, rental or repair of a product of CFI, no duty to defend or indemnify is implicated under this endorsement.

### 3)     *Keystone Equipment Finance Company, Inc., v. Cleveland Freightliner, Inc. et al.*

In the *Keystone* suit, filed with this Court on March 26, 2009, Keystone contends it was approached by a finance broker on behalf of CFI to obtain financing for Kaz's purchase of a 2007 Terex dump truck.  Doug Callahan, an employee of CFI, allegedly represented that CFI owned the dump truck, even though it did not.  Callahan executed a purchase agreement with Kaz for the purchase of the truck.  CFI then provided Keystone with specification and value information on the truck along with a quotation for the sale of the truck and financial information on Kaz.  In reliance on this information, Keystone agreed to finance the truck in exchange for a security interest in it.  Keystone perfected its security interest in the vehicle and sent CFI a check for $199,200.00.  Keystone's Complaint alleges CFI did not own the truck or have possession of it despite the express and implied representations by CFI and Callahan that CFI did.  Keystone's Complaint alleges claims against CFI for fraud and misrepresentation, conspiracy, and violations of RICO.  On April 14, 2009, Keystone amended its Complaint to include a claim of negligence against CFI for failing to determine Kaz's credit worthiness and/or assuring itself CFI was the owner of the truck.


**Occurrence and Property Damage**

As alleged in the *Keystone* Complaints, there is no financing agreement between CFI and Keystone, only an attached financing agreement between Keystone and Kaz.  Kaz granted

20

Keystone a security interest in the dump truck in exchange for financing.  Attached to the

*Keystone* Complaint is a Vendor's Best-Effort Remarketing Agreement between CFI and

Keystone wherein CFI agreed to pick-up, store and remarket the dump truck in question in the

event of Kaz's default.

Again, under the policy, coverage exists for bodily injury or property damage that results

from an "occurrence".  "Occurrence" under the policy is an accident which Ohio law defines as

"unintended and unexpected happenings."  Here, the *Keystone* Complaints allege fraud and

misrepresentation as to CFI's ownership and possession of the dump truck.  The Complaints

state, "the false statements, misrepresentations and disclosures were made with full knowledge

of their falsity and/or with reckless disregard for their truth and to induce Plaintiff to enter into

this financing arrangement."  The fraud and misrepresentation claim alleges "Defendants also

acted with malice and/or reckless disregard of the facts and purposely attempted to deceive the

Plaintiff for the purpose of having Plaintiff finance the vehicle."

The civil conspiracy claim alleges that CFI, along with the other Defendants in the

Keystone suit, "collectively planned, cooperated and agreed to defraud Plaintiff by making the

above representations."  The Complaints further allege, "the Conspirators conspired to hide their

plans to induce Plaintiff into advancing funds under the Kaz Financing Agreement to Valley and

ultimately to be shared by the conspirators."

The RICO claim contends the Defendants, including Callahan and CFI, were "motivated

by a desire to earn income derived from the schemes to defraud."  "The Defendants committed,

aided and abetted and/or conspired to commit violations of the following provisions of Title 19

of the U.S. Code..."  Those offenses included  mail and wire fraud, obstruction of justice,

interstate transportation offenses, and theft and obstruction under state statute. The RICO claim further alleges that the Defendants agreed to receive income from the pattern of racketeering and intended to receive such income.

Finally, the Amended Complaint alleges a claim for negligence against CFI stating,

> "Defendants Valley and/or its employees and/or agents and Callahan acted negligently in failing to determine Kaz Paving, Inc.'s credit worthiness and/or assuring itself they were the owner of the truck which they agreed to sell to Defendants Kaz and John Kasmerski and/or otherwise determine that said truck was in existence and/or available for sale. That the acts of the Defendants set out here was done willfully and wantonly and in complete disregard of Plaintiff's interest..."

The Court holds that none of the above claims against CFI or Callahan constitute an "occurrence" as defined in the policy. The fraud and misrepresentation claim clearly allege CFI and/or Callahan purposely intended to deceive Plaintiff. The conspiracy and RICO claims allege conduct that was not accidental but purposeful and intentional. Finally, the negligence claim states the actions by CFI and Callahan were willful. Since none of the above claims allege that the Plaintiff's damages resulted from unintended and unexpected happenings, the Court finds they were not "occurrences" under the policy definitions and there is no duty to defend or indemnify.

**Title Errors and Omissions**

Since there is no allegation in the Complaints that Kaz sold or transferred title of the dump truck and because the *Keystone* Complaints allege intentional fraudulent acts by CFI and/or Callahan, the Title Errors and Omissions endorsement does not apply to the allegations in the *Keystone* Complaints.

**Truth in Lending Coverage**

22

Since the claims in the *Keystone* Complaints do not allege violations of Title 1 of the Consumer Credit Protection Act or any other statute relating to truth in lending or leasing which applies to the insured's business, the Court holds this endorsement does not impose a duty to defend or indemnify the claims in the K*eystone* Complaints.

**False Pretense Coverage**

Because this coverage is dependent on CFI's voluntarily parting with possession of, "evidence of title to or possession of the covered auto" the coverage does not apply because the allegations in the *Keystone* Complaints expressly claim CFI did not own or possess the dump truck.  Also, the Complaints allege the bad acts were perpetrated by CFI, not against CFI.  Furthermore, the coverage is first person coverage and does not impose a duty to defend or indemnify by Defendant.

**Extended Defense Coverage**

For the reasons set forth in the *Mericap* and *GECC* portions of this Opinion, Keystone was not a customer of CFI, as there are no allegations of repeated business dealings between CFI and Keystone, no allegation that Keystone purchased a product of CFI's nor that the *Keystone* suit is brought on behalf of CFI's customer, Kaz.

Therefore, the Court holds Defendant was not obligated to defend or indemnify Plaintiff for the claims contained in the underlying suits and the Court denies Plaintiff's claim for declaratory judgement and breach of contract.

Furthermore, Ohio law clearly states if denial of coverage is appropriate there is no bad faith.  *Hahn's Electric Co. v. Cochran,* No. 01AP-1391, 01AP-1394, 2002 WL 31111850 at *8 (Ohio Ct. App. Sept. 24, 2002).  Although CFI alleges a claim of bad faith for failure to

23

investigate the claims, CFI does not argue this issue in its Brief in Opposition and have provided the Court with no case law demonstrating a duty to investigate claims under Ohio law when the allegations in the underlying claims on their face do not invoke coverage under the relevant policy. Therefore, CFI's bad faith claim fails.

For the foregoing reasons, the Court grants Defendant Federated's Motion to Dismiss on all Plaintiff's Claims.

IT IS SO ORDERED.

 S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

January 26, 2010

24